## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-118-JFH |
| GARRIN MICHAEL THOMPSON, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is a sealed revised notice pursuant to Federal Rule of Evidence 414, 413, and 404(b) ("Notice") filed by the United States of America ("Government").  Dkt. No. 62. Defendant Garrin Michael Thompson ("Defendant") objects to the Notice.  Dkt. No. 42. Defendant is charged with one (1) count each of transportation of a minor with intent to engage in criminal sexual activity; aggravated sexual abuse of a minor under twelve (12) years of age in Indian country; and coercion and enticement of a minor.  Dkt. No. 52.  The Government intends to introduce evidence at trial demonstrating prior acts where Defendant engaged in sexual and sexually connotative behavior toward or about minors.  For the reasons stated, the evidence described in the Notice is ADMISSIBLE.

## BACKGROUND

### I.   Procedural Background

The case began on April 15, 2022, when Defendant was initially charged by criminal complaint.  Dkt. No. 1.  The complaint and supporting affidavit allege that Defendant sexually abused his ten (10) year old daughter, A.T., while the two stayed at a hotel in Texas for a gymnastics meet between April 3 and April 6, 2022.  *Id.*  On May 2, 2022, the Government indicted Defendant on one count of aggravated sexual abuse of a minor in violation of 18 U.S.C. § 2241(c)

related to the alleged conduct against A.T.  Dkt. No. 26.  The following day, the Government filed a superseding indictment with the same charge, correcting a technical omission in the original indictment.  Dkt. No. 31.

On May 12, 2022, the Government filed an initial 413/414 notice, describing multiple other alleged acts by Defendant it intended to introduce at trial.  Dkt. No. 37.  The Court invited evidentiary supplementation [Dkt. No. 38], which the Government provided [Dkt. No. 39-1 through 39-10].  Along with the documentary evidence it submitted, the Government filed an "amended and corrected notice," stating the revised document corrected four (4) errors in the original notice.  Dkt. No. 39.  Defendant filed a brief in opposition.  Dkt. No. 42.

On May 24, 2022, Defendant filed an opposed motion to extend scheduling deadlines, seeking to move the trial in the case from June 2022 to September 2022.  Dkt. No. 40.  He provided two bases for a continuance:  first, the Government had recently informed counsel that it planned to seek a second superseding indictment adding two additional counts related to two additional alleged victims; and second, discovery was ongoing and incomplete.  *Id.* at 1-2.  The Government responded, confirming both that it planned to add two additional victims in a second superseding indictment and that discovery was ongoing, particularly regarding extraction of Defendant's electronic devices.  Dkt. No. 46 at 3.  However, the Government stated it opposed any continuance of the case, claiming "the victims in this matter, and the minor victim, in particular, are anxious to move past the unfortunate circumstances that [Defendant's] actions have caused" and stating Defendant had "the discovery necessary to proceed with trial as scheduled."  *Id.* at 1.  The Court convened a hearing on June 2, 2022, and subsequently granted Defendant's continuance motion.  Dkt. No. 49.  In its Order, the Court noted that the Government represented during the June 2, 2022 hearing that the ongoing discovery could be voluminous.  *Id.* at 2.

On June 8, 2022, the Government filed a second superseding indictment containing three (3) charges. Dkt. No. 52. The first charge still relates to A.T., but the timeframe changed from April 3 through 6, 2022 to March 4 through 7, 2022 and the charging statute changed from 18 U.S.C. § 2241(c) for aggravated sexual abuse to 18 U.S.C. § 2423(a) for transportation of a minor with intent to engage in criminal sexual activity. *Id.* at 1. The new indictment also alleged one count of aggravated sexual abuse of a minor under 12 years of age in Indian country related to alleged victim S.T. and one count of coercion and enticement of a minor related to alleged victim A.J. *Id.* at 2-3. Both S.T. and A.J. had been 413/414 witnesses in the initial briefing. *See* Dkt. No. 37; Dkt. No. 39.

After the new indictment, the Court entered a minute order stating, "In light of the charges added in the second superseding indictment, the Government is invited to submit a revised 413/414 notice by the notice deadline set out in the current scheduling order." Dkt. No. 58. The Government timely submitted the Notice, which assumes familiarity with the previous 413/414 notices. Dkt. No. 62. Defendant has not filed a new response.

## II. Factual Background

The Government summarizes its case in the conclusion of the Notice:

> This trial involves a family. Five sisters lived with Thompson and his second wife after Thompson and his first wife had two daughters and spent time with the first wife's much younger brother. Over the course of two decades, Thompson sexually assaulted or molested at least three of the daughters and he enticed and coerced the younger brother in an effort to molest or assault him as well.

Dkt. No. 62 at 25. According to the Government, Defendant demonstrated an ongoing pattern of pedophilic behavior toward minors in his care and in his digital footprints. Some of this conduct is charged in the current operative indictment. The Government wants to introduce evidence of other conduct for context and explanation.

### A. Charged conduct

#### 1. Allegations related to A.T.

In either March or April 2022, Defendant allegedly sexually abused his ten-year-old daughter, A.T., when the two were staying at a hotel for a gymnastics meet in Tyler, Texas.[1] Dkt. No. 1.  Defendant's wife and A.T.'s mother, Holly Thompson ("Mrs. Thompson"), was not present in Texas.  According to the complaint in the case, Defendant and A.T. planned to use the hot tub at the hotel, but upon discovering it was not in working order, Defendant suggested they use the bathtub in their room instead.  *Id.*  A.T. kept her bathing suit on until Defendant told her repeatedly to take it off and get in the tub.  *Id.* at 3-5.  Defendant also removed his clothes and entered the bathtub.  *Id.*  He asked A.T. to lay on his stomach, but she declined and washed his hair instead. *Id.*  At some point, A.T. did lay on Defendant's stomach, at which point he stroked her body and "washed" "both the inside and outside of her vagina" with his hands and fingers.  *Id.* at 5.  After the bath, Defendant told A.T. to leave her clothes off and requested she massage him with lotion. *Id.*  A.T. massaged his feet and legs.  *Id.*  After this, Defendant "massaged all over her body including on her vagina again.  He used his hand and fingers and, once again, massaged on both the inside and outside of her vagina."  *Id.*  A.T. was later forensically interviewed, during which she described both the events that occurred and the appearance of Defendant's penis.  *Id.*

---

[1]  The complaint, affidavit in support of complaint, original indictment, superseding indictment, and first two 413/414 notices allege the charged conduct occurred between April 3 and April 6, 2022.  *See* Dkt. No. 1 at 1; *id.* at 3; Dkt. No. 26; Dkt. No. 31; Dkt. No. 37 at 2; Dkt. No. 39 at 3. The second superseding indictment and the Notice allege the charged conduct occurred between March 4 and March 7, 2022.  *See* Dkt. No. 52 at 1; Dkt. No. 62 at 5.  Despite the variation in alleged dates, the complaint, previously-filed notices, and Notice all allege the charged conduct occurred during a gymnastics meet in Tyler, Texas.  Dkt. No. 1 at 3; Dkt. No. 37 at 2; Dkt. No. 39 at 3; Dkt. No. 62 at 6.  The Court thus concludes for current purposes only that the documents refer to the same conduct.

### 2.   Allegations related to S.T.

Between 2007 and 2009, Defendant allegedly sexually abused his four- to six-year-old daughter, S.T.  Dkt. No. 52 at 2; Dkt. No. 62-9.  S.T. described the alleged abuse in two interviews, one with a forensic interviewer at the Claremore Child Advocacy Center and one with an FBI agent.  Dkt. No. 62-9.  During her forensic interview, S.T. said Defendant brought her into the master bedroom of their house, told her to pull down her pants, and told her to lay on the bed.  *Id.* at 1.  She followed his directions and laid on the edge of the bed with her legs spread.  Defendant then "licked and kissed the inside of her vagina."  *Id.*  S.T. thought Defendant may have told her not to say anything about this incident but could not remember for sure.  *Id.* at 2.  During her FBI interview, S.T. said that Defendant "used his mouth to inappropriately touch her vagina" and "used his mouth . . . all over her" when she was approximately five (5) years old.  *Id.* at 5.  S.T. also told the interviewing agent that Defendant "would frequently tickle [his daughters and step-daughters] on their inner thighs and lower stomach areas," where it was "'too close for comfort'" and "close to their crotch areas."  *Id.*

### 3.   Allegations related to A.J.

Between 2000 and 2001, Defendant allegedly sexually abused his teenage brother-in-law, A.J.  Dkt. No. 52 at 3; Dkt. No. 39-7.  A.J. was interviewed by FBI agents in April 2022.  Dkt. No. 39-7.  He told them he recalled two instances he believed occurred when he would have been approximately 12 years old.  *Id.* at 1.  In the first instance, both A.J. and Defendant were in a living room sitting on different furniture.  Defendant put on a softcore pornography video and started to masturbate in front of A.J.  *Id.*  He told A.J. "that if he also wanted to masturbate, he should feel free to do so."  *Id.* at 1-2.  A.J. declined.  *Id.* at 2.

In the second instance, A.J. and Defendant were playing video games on a computer together.   Defendant then suggested web browsing and showed A.J. both heterosexual and homosexual pornography.   *Id.*   A.J. had not seen either heterosexual or homosexual pornography before being shown it by Defendant.   *Id.*   While showing A.J. the pornography, Defendant asked A.J. if he wanted a "blowjob," which A.J. declined.   Defendant then exposed himself and masturbated to completion in front of A.J.   *Id.*   During the same interaction, Defendant also showed A.J. lewd photographs of Defendant's then-wife (who was A.J.'s older sister) and sex toys that Defendant and A.J.'s sister used together.   *Id.*

**B.  Other act evidence**

The Government plans to present evidence of several other types of conduct under Rule 413/414 and/or Rule 404(b).

**1.  Allegations related to C.S.**

C.S. is Defendant's step-daughter.   Dkt. No. 62 at 7; Dkt. No. 62-1.   She reported several instances of alleged sexual abuse by Defendant during a forensic interview at the Claremore Child Advocacy Center and later during an interview with FBI agents.   Dkt. No. 62-1.   During her first interview, C.S. reported that Defendant sexually abused her several times when she was "approximately seven years old to a little older."   *Id.* at 1.   At least two (2) instances took place in the master bedroom of their home.   *Id.*   C.S. described an instance where Defendant asked if he could touch her and then "touched her crotch" with his fingers, as well as at least one instance where Defendant "tickled" her in the same area.   *Id.* at 2.

C.S. provided additional allegations during her second interview.  *Id.* at 3.[2]  She told interviewers that when she was approximately eight (8) or nine (9) years old, Defendant viewed child pornography while in the same playroom where C.S. was watching television.  *Id.*  She reported she "did not want to pay too much attention to the screen," but saw a depiction of a young female she estimated to be "not younger than 10 years old and not older than 17 years old" performing a sexual act on a male.  *Id.*

During her second interview, C.S. also described various bribes Defendant offered her in exchange for her allowing him to touch her in a sexual manner.  *Id.* at 4.  In one instance, Defendant wanted to play a "tickle game," which C.S. did not want to participate in because he would "tickle her on her crotch."  *Id.*  She ran to a different room, Defendant followed her, she hid under a beanbag, and Defendant "call[ed]" and "yelled her name and said he would take her to buy new shoes if she came out."  *Id.*  C.S. complied and got in the back seat of Defendant's car to be far away from him.  *Id.* at 5.  Defendant told her they would not leave until she moved to the front seat; after she moved to the front seat, he put his hand on her upper thigh while he drove.  *Id.*

Another bribe occurred when C.S. was approximately ten (10) years old.  *Id.*  C.S. recalled that she and Defendant were on Defendant and Mrs. Thompson's bed, perhaps watching television. Defendant "started to touch [her] on the outside of her crotch with his hands."  *Id.*  Although C.S.

---

[2]  Several allegations are not described in the Government's Notice, including an instance where Defendant allegedly masturbated to ejaculation in a shared area of the home where C.S. was doing homework and then approached her while holding a soiled napkin he had used to clean himself; a recurring phenomenon where C.S. would sleep next to Defendant and Mrs. Thompson in their bed due to her fear of thunderstorms and would wake up with Defendant's hands "in her pants;" and several instances where Defendant bathed naked with C.S. when C.S. was seven (7) or eight (8) years old.  *Id.* at 3-7.  The Court does not consider in this Order any events not mentioned in the Government's Notice at Dkt. No. 62.  The Government is cautioned of the need to file a supplemental notice if it desires to introduce any additional evidence which may be described in the documents filed as exhibits to the Notice but not described in the Notice itself.

said no multiple times, Defendant repeatedly asked if he could continue and C.S. likewise repeatedly declined.  Defendant eventually told C.S. that "if she let him touch the outside of her crotch for three more seconds, he would buy her a cat."  *Id.*  C.S. wanted a pet cat and so cooperated with Defendant.  When C.S. learned of the allegations involving A.T., she told Mrs. Thompson "she knew [A.T.] was telling the truth because similar things had happened to her."  *Id.* at 8.

### 2.  Allegations related to S.S.

S.S. is Defendant's step-daughter and C.S.'s sister.  She was twenty (20) years old when she participated in a forensic interview in April 2022.  Dkt. No. 62-2.  She reported that Defendant had not touched her in a sexual manner but that on several occasions when S.S. was twelve (12) or thirteen (13) years old, Defendant would enter the bathroom while she was showering behind a "clear fogged glass" door, which made her uncomfortable.  *Id.* at 2.

### 3.  Electronic evidence

In April 2022, when the investigation had begun but before Defendant was arrested, Defendant and his wife exchanged text messages about the case.  Dkt. No. 62-3.  At one point, Mrs. Thompson texted Defendant "You were watching child porn for gods sake. WTH".  *Id.* at 5.  Defendant denied the allegation.  *Id.*  Investigators subsequently examined Defendant's electronic devices looking for evidence of child sexual abuse material ("CSAM").  Dkt. No. 62-4.  An FBI report concluded that, while evidence found did not meet the legal standard for CSAM, numerous files were relevant to the investigation.

First, Defendant's devices contained an unspecified number of suggestive images of children.  Some are "photographs of children that appeared to be zoomed in to focus on their torsos/private areas."  *Id.*  Others are photographs of "an infant female with her vagina in full display," "two small female children in a bathtub," "a toddler on the toilet fully naked," and "one

of [Defendant's] young daughters posing in a two-piece bathing suit." Dkt. No. 62-7 at 1. The devices also contained images of adults "zoomed in to focus on [their] torso/private areas." Dkt. No. 62-4; Dkt. No. 62-5.

Second, law enforcement found "approximately 50 photographs of [online news] headlines related to sexual crimes against children, child pornography, human trafficking, and other sex crimes" on Defendant's devices, along with "photographs of children that also appeared to be captured from [news articles] . . . [including] young children to teenagers in swim trunks or shorts with no shirts and in swimsuits." Dkt. No. 62-5.

Third, agents discovered still images and videos which appear to have been taken by hidden camera in Defendant's Oklahoma residence and Texas vacation home. Dkt. No. 62-6. Investigators showed screen captures of five (5) videos to Mrs. Thompson, who identified each: Defendant standing in a bathroom setting up a hidden camera; the same bathroom without anyone in it; a different bathroom showing Mrs. Thompson using the toilet; a bedroom closet; and S.S. using the toilet in a bathroom Mrs. Thompson could not identify but believed was at a vacation home that she and Defendant rented in 2017. *Id.* If the last video was indeed taken in 2017, S.S. would have been a minor. *See* Dkt. No. 62-1 (stating S.S. was born in 2001). Photographs saved on Defendant's devices included more than one hundred (100) pictures from the bedroom closet camera, with "at least one of [Defendant's] young daughters in various stages of undress, to include fully nude. Some of the pictures are zoomed in to the vagina of the child and others appear unaltered." Dkt. No. 62-7 at 1. Videos from the bedroom closet camera captured "at least one of [Defendant's] daughters changing clothes and depict[] her fully nude." *Id.* Videos from the bathroom camera captured Mrs. Thompson and one daughter using the toilet and another daughter changing shirts. *Id.* at 2.

Finally, agents discovered "internet videos depicting persons who appear to be teenagers engaged in sex," with one video displaying "www.HiddenCameraTapes.com" on the bottom of the frame. *Id.* It was not clear to investigators whether the persons depicted were older or younger than eighteen (18). Dkt. No. 62 at 20.

## AUTHORITY AND ANALYSIS

### I.   Rule 413/414

#### A. *Benally* legal standard

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)). However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). "Rule 414(a) contains identical language related to accusations of child molestation." *Benally*, 500 F.3d at 1090. Because the language and standards are identical, the Court adopts the Tenth Circuit's convention of referencing evidence offered under either of these provisions as "Rule 413/414 evidence." *See id.*

Rule 413/414 evidence

> must meet three threshold requirements before it may be considered for admission . . .
>
> (1) the defendant is accused of a crime involving sexual assault or child molestation;
>
> (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation; and
>
> (3) the evidence is relevant.

*Id.* Once evidence meets *Benally*'s initial requirements, it is still "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotation marks and citation omitted); *see* Fed. R. Evid. 403.

### B. *Benally* analysis

*Benally* first requires a defendant be accused of a crime involving sexual assault or child molestation.  For purposes of Rules 413 and 414, sexual assault includes "any conduct prohibited by 18 U.S.C. chapter 109A" and child molestation includes "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child [under the age of 14]."  Fed. R. Evid. 413(d)(1); Fed. R. Evid. 414(d)(1)-(2).  Here, Defendant is charged with aggravated sexual assault of a minor under 12 years old, in violation of 18 U.S.C. § 2241(c), which is within 18 U.S.C. chapter 109A.  Dkt. No. 31.  The first *Benally* factor is satisfied.

*Benally* next requires that the proffered evidence involves other sexual assault or child molestation.  In addition to conduct prohibited by chapter 109A, sexual assault or child molestation also includes:  contact without consent between any part of a defendant's body and another person's genitals or anus or between a defendant's genitals or anus and any part of another person's body; deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or an attempt or conspiracy to engage in any such conduct.  Fed. R. Evid. 413(d); Fed. R. Evid. 414(d).

The Government alleges Defendant repeatedly touched C.S.'s "crotch," or genitals, under the guise of tickling her.  This physical contact falls within chapter 109A's prohibitions.  *See* 18 U.S.C. § 2246.  The other alleged actions in the Notice certainly have sexual connotations, such as putting a hand on a minor's upper thigh; watching pornography while in a room with a minor; walking into a bathroom to watch a minor shower; saving electronic files with zoomed-in focus

on children's genitals; hiding cameras to capture still and video images of minors changing clothes or using the toilet; and compiling news reports and information about sex crimes.  However, as Defendant correctly points out [Dkt. No. 42 at 2], these acts do not fall within Rule 413/414's definitions of sexual assault or child molestation because they do not involve physical genital contact or sexual pleasure derived from death, bodily injury, or physical pain.  *See* Fed. R. Evid. 413(d); Fed. R. Evid. 414(d).  Evidence of this alleged prior conduct may be admissible under a different rule, such as Rule 404(b), but its Rule 413/414 inquiry ends here.[3]

Finally, *Benally* requires the proffered evidence be relevant.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence."  Fed. R. Evid. 401.  Relevance of Rule 413/414 evidence is explained by its legislative history, which relied "on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes." *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* 23 Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 5385 (April 2020 update) ("The legislative history makes clear that the drafters and Congress believed that evidence under Rules 413, 414, and 415 is relevant to prove propensity and that this includes the defendant's propensity to commit sexual assault or child molestation.").  Defendant's alleged molestation of C.S. is relevant to the Government's case against Defendant concerning A.T. and S.T. because Congress has determined that examples of past sexual assault are relevant to determining whether a defendant committed a charged assault.

---

[3] The Government concedes this in its Notice.  Dkt. No. 62 at 12.

The *Benally* threshold requirements are satisfied for the allegation that Defendant repeatedly touched C.S.'s genital area.  The Court continues its Rule 413/414 analysis with Rule 403 balancing concerning this allegation only.

### C. *Enjady* legal standard

"[A] district court must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted."  *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1988).  However, before allowing admission, the district court must "fully evaluate the proffered evidence and make a clear record of the reasoning behind its findings" as to Rule 403 and its required balancing test.  *Benally*, 500 F.3d at 1091 (quotation omitted).  To assess Rule 403's requirements in the context of Rule 413/414 evidence, courts weigh:  "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence," against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct."  *Enjady*, 134 F.3d at 1433.[4]  No single factor of the *Enjady* test is dispositive.  *United States v. Mann*, 193 F.3d 1172, 1175 (10th Cir. 1999).

---

[4]   The second *Enjady* factor—probative value—involves five additional subfactors:  "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony."  *Benally*, 500 F.3d at 1090-91.

### D. *Enjady* analysis of probative value

#### 1. How clearly the prior act has been proven

Before considering the other *Enjady* factors, the Court must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090.   Here, the Government submitted FBI 302 interview reports summarizing what C.S. told investigators during two different interviews.   Dkt. No. 62-1.   It also submitted an FBI 302 where S.S. told agents that C.S. "told [S.S. about being sexually abused herself by [Defendant]," although C.S. "did not tell [S.S.] details about what she had experienced" [Dkt. No. 62-2], and a cellphone extraction of texts between Defendant and Mrs. Thompson where Defendant says he wants to "resolve what [happened] to . . . [C.S.]."   Dkt. No. 62-8. The Government has presented sufficient evidence for the Court to determine that a jury could reasonably find by a preponderance that the other alleged abuse occurred.   *See United States v. Perrault*, No. 17-2558, 2019 WL 1332584, at *2 (D.N.M. Mar. 25, 2019) (concluding FBI 302 reports, other documentary evidence, and cross-corroboration between victims met *Enjady*'s preponderance standard).

#### 2. Factors demonstrating probative value

To fully assess the probative value of Rule 413/414 evidence, courts must consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Batton*, 602 F.3d at 1198.

Here, the allegations of Defendant's behavior toward A.T., S.T., and C.S. are similar because they all involve Defendant touching the girls' genital areas with his hands or mouth when

they were between the ages of four (4) and ten (10) years old.  Additionally, both S.T. and C.S. describe Defendant excusing or concealing the abuse as a "tickle game."  Regarding timeframes, the events described by C.S. occurred approximately eight (8) to ten (10) years before the charged conduct.  However, the similarity of prior acts to the charged offenses outweighs the Court's concerns of remoteness in time.  *See Batton*, 602 F.3d at 1199 (quoting *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997)).  The frequency of the acts weighs toward probative value, as C.S. described a repeated course of conduct by Defendant.  Neither party identifies any intervening events or need for evidence beyond Defendant's and C.S.'s testimony.  Taken as a whole, the *Batton* subfactors—particularly similarity of the prior acts and charged acts and the frequency of the prior acts—demonstrate probative value and weigh toward admission.

### 3.   How seriously disputed the material fact is

 "The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility."  *United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012).  Defendant's alleged sexual touching of A.T.'s and S.T.'s genital areas are key issues in this case.  This factor weighs in favor of admission.

### 4.   Availability of less prejudicial evidence

The Government did not adequately address this issue but instead discussed the unfair prejudice factors.  Since the Government did not fully develop this argument, the Court cannot conclude the Government does not have any less prejudicial evidence.  This factor weighs against admission of the evidence.  However, the other three *Enjady* factors weigh in favor of admitting the evidence.  The Court concludes the evidence has probative value favoring admission.  This is not the end of the inquiry.  The Court must weigh the *Enjady* factors against the unfair prejudice factors to determine if the evidence should ultimately be admitted.  *Enjady*, 134 F.3d at 1433.

### E. *Enjady* analysis of prejudicial dangers

#### 1. Risk of improperly-based verdict

Should the Rule 413/414 evidence be presented, the Court intends to give a proper limiting instruction as requested by Defendant [Dkt. No. 42 at 4]. Because jurors are presumed to follow the Court's instructions, the Court finds that the evidence of Defendant's other actions would be unlikely to contribute to an improperly based jury verdict. *See United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").

#### 2. Risk of distraction

Although the Court finds there is some risk that presenting a victim of an uncharged act to the jury will distract the jury from considering the central issues at trial, the Court does not find that this risk is severe. Testimony regarding Rule 413/414 evidence may be narrowly tailored to reflect the similarities between Defendant's treatment of A.T., S.T., and C.S. For the reasons previously discussed, Defendant's alleged conduct toward C.S. is relevant to material issues in the case, and as such, the Court is not concerned that the testimony will be unduly distracting or inflammatory to the jury. Additionally, any risk of jury distraction can be minimized by the limiting instruction and the Government efficiently presenting C.S.'s testimony.

#### 3. Time considerations

As discussed above, the Court believes that the strong similarities between the alleged acts may be presented efficiently and through a narrowly tailored line of questioning. Thus, the Court does not find that the Rule 413/414 evidence will be unnecessarily time consuming.

In sum, the *Benally* and *Enjady* factors weigh toward admission of evidence relating to Defendant's alleged abuse of C.S. This evidence is admissible under Rule 413/414. The Court

next turns to admissibility under Rule 404 of the other sexually-charged evidence described in the Government's Notice.

## II.  Other Bad Acts

### A.  Legal standard

#### 1.  Intrinsic versus extrinsic evidence

When considering admissibility of prior bad acts, the Court must "distinguish between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992), *abrogated on other grounds as recognized in United States v. Bell*, 154 F.3d 1205, 1209-10 (10th Cir. 1998)).  Intrinsic evidence is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Murry*, 31 F.4th 1274, 1290-91 (10th Cir. 2022) (quotations omitted).  It takes many forms, such as evidence that:

- Is "inextricably intertwined with the charged conduct;"

- Occurs "within the same time frame as the activity in the conspiracy being charged;"

- Is "a necessary preliminary to the charged [crimes];"

- Provides "direct proof of the defendant's involvement with the charged crimes;"

- Is "entirely germane background information, directly connected to the factual circumstances of the crime;" or

- Is "necessary to provide the jury with background and context of the nature of the defendant's relationship to [other actors]."

*United States v. Cushing*, 10 F.4th 1055, 1075-76 (10th Cir. 2021) (citing *Kupfer*, 797 F.3d at 1238).  If the Court determines evidence is intrinsic, it must conduct a Rule 403 analysis to determine that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice. *Irving*, 665 F.3d at 1212.  This is not a high bar, as "our law favors admission of

all relevant evidence not otherwise proscribed [and] exclusion under [Rule 403] is an extraordinary remedy that should be used sparingly." *Id.* at 1213 (emphasis removed); *Murry*, 31 F.4th at 1291 (same).

Extrinsic evidence "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Murry*, 31 F.4th at 1291.  If the Court determines the evidence at issue is extrinsic, it must conduct a Rule 404(b) analysis. *Kupfer*, 797 F.3d at 1238.

### 2.   Rule 404(b)

Rule 404(b) provides, in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.…

> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  There are four factors to assess admissibility under 404(b):  (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the evidence is substantially outweighed by the prejudicial effect, and (4) the availability of a limiting instruction.  *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Two initial definitions are useful.  Regarding the second factor, Rule 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401. And regarding the third factor, "[e]vidence is not unfairly prejudicial simply because it is damaging to [a party's] case."  *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted).  Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.*  In other words, evidence is unfairly

prejudicial if it "tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (emphasis in original) (quotation omitted). "In weighing the probative value of evidence against unfair prejudice, district courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Murry*, 31 F.4th at 1291 (internal quotations omitted).

### B. Analysis

#### 1. Defendant's behavior toward S.S.

The Government claims that evidence of Defendant's alleged repeated entry into a bathroom while S.S. showered is intrinsic evidence because it shows context, "more than a lack of concern for [children's] privacy," Defendant's "desire for sexual gratification," and his "opportunistic approach to finding that gratification in the minor children in his care whenever and wherever he could." Dkt. No. 62 at 22-24. The Court agrees. Defendant allegedly exploited his ten-year-old child A.T's bathing time to seek sexual pleasure for himself. Defendant's behavior toward his then twelve-or-thirteen-year-old step-child S.S. is germane background material directly connected to factual circumstances of this charge because it demonstrates he had a practice of entering bathrooms occupied by minor females who were bathing and who were of an age that did not need parental assistance for hygiene.

Since this is intrinsic evidence, the Court must consider Rule 403. *See Irving*, 665 F.3d at 1212. Here, the probative value of the evidence is high given the similarities between the allegations, and Defendant has not demonstrated that unfair prejudice would substantially outweigh that value. The "extraordinary remedy" of exclusion is not warranted.

### 2.  Pornographic videos

The Government also contends the evidence of pornographic videos depicting teenagers having sex is intrinsic.  Dkt. No. 62 at 24.  It reasons that the videos are "directly connected" to count three and the claim that Defendant coerced or enticed A.J. by showing him pornography on a computer.  However, the timeframe alleged in count three is the years 2000 and 2001.  It is true that intrinsic evidence may predate charged conduct by months or even years.  *See, e.g., Kupfer*, 797 F.3d at 1239-40 (affirming treatment of evidence as intrinsic where evidence predated charged conduct by four (4) years).  It is less clear whether evidence which *postdates* charged conduct is intrinsic—especially when the evidence came about approximately twenty (20) years after the charged conduct.  The gap is simply too distant for the Court to consider Defendant's 2022 possession of pornography to be directly connected to Defendant's 2000-2001 charged conduct. Though not admissible as intrinsic evidence, the evidence related to the pornographic videos may be admissible under Rule 404(b).

### 3.  Other electronic evidence

The Government does not contend that the remaining electronic evidence, including evidence related to the hidden cameras, is intrinsic.  Dkt. No. 62 at 22-25.  It instead claims that the zoomed-in photographs, news articles, and recordings from hidden cameras, as well as the possession of pornographic videos depicting teenagers—all discovered on Defendant's electronic devices—are admissible evidence under Rule 404(b) because they demonstrate intent, knowledge, motive, preparation, planning, and lack of mistake.  Dkt. No. 62 at 17-22.  For instance, the "zoomed or cropped photos of the torsos and pelvic areas of his daughters and other children . . . zoomed in between the legs of a teenager sitting in a hammock, or of the waist to knees of cheerleaders in their skirts . . . display [Defendant's] prurient intent, motivation, and knowledge."

*Id.* at 19.  The saved news articles, some of them redlined or otherwise annotated, "show that [Defendant] knew the consequences of his actions, how others fared, or how far he could go before his actions could get him into serious trouble." *Id.*  In sum, the Government claims, the electronic evidence "will show that [Defendant] was motivated to commit all three [charged] crimes by his sexual desire for children." *Id.* at 22.

To determine admissibility of this electronic evidence, the Court applies the four-part *Huddleston* test.  First, the evidence is offered for a proper purpose:  the Government plans to use it to demonstrate Defendant's pedophilic motive and intent; his preparation, planning, and knowledge related to the criminality of his actions; and his lack of mistake in pursuing sexual gratification from underage individuals.  These are directly relevant to the three crimes alleged in the second superseding indictment, as each relates to child sexual abuse or grooming.  The probative value is strong and the evidence, while emotionally heavy, is not unfairly prejudicial.  The emotional character of the evidence is directly tied to the criminal character of Defendant's alleged crimes, not wholly separate from it.  *See Ford*, 613 F.3d at 1268.  Finally, the Court will provide a limiting instruction as requested by Defendant instructing the jury to consider the evidence for only proper purposes.  *See* Dkt. No. 42 at 4.

### CONCLUSION

IT IS THEREFORE ORDERED that the evidence described in the Government's revised notice pursuant to Federal Rule of Evidence 414, 413, and 404(b) is ADMISSIBLE.

DATED this 18th day of August 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE