IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-118-JFH |
| GARRIN MICHAEL THOMPSON, | |
| Defendant. | |

**United States of America's Sentencing Memorandum**

Garrin Michael Thompson is a sexual predator who preyed upon two of his daughters and a younger brother-in-law over the course of two decades. The evidence at trial showed that he also betrayed the trust of his step-daughters, and he engaged in a pattern of pedophilic behavior that may have continued, or even escalated, had he escaped prosecution for his crimes. After four of his victims, his ex-wife, and other witnesses testified against him, a federal jury found Thompson guilty of (Count I) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a); (Count II) Aggravated Sexual Abuse of a Minor Under 12 in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, and 2241(c); and (Count III) Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b). Consideration of the factors set forth in 18 U.S.C. § 3553 support the sentence contemplated by the United States Sentencing Guidelines: life in prison. *See* Thompson PSR ¶ 82.

**Facts**

As the Court is aware from presiding over the trial of this matter, Thompson knowingly transported his 10-year-old daughter, A.T., in interstate commerce with the intent that she engage in any sexual activity for which any person can be charged with a criminal offense. Essentially, he took her to a gymnastic meet in Texas where he sexually molested her in their hotel room. This occurred in March, 2022.

When A.T. returned to Catoosa, Oklahoma, she disclosed the incident to others at her gymnastics training facility and to two of her half-sisters. One of her sisters, S.T., is an Indian and was 18 years old at the time. S.T. disclosed that Thompson had molested her when she was between the ages of 4 and 6, which would have been approximately 2007-2009. This allegation is the basis for Count Two of the Second Superseding Indictment, in that Thompson knowingly engaged and attempted to engage in a sexual act with S.T., a child who had not attained the age of 12 years.

After these allegations came to light, investigators learned that Thompson had also preyed upon the younger brother of his first wife when the younger brother was between the age of 12 and 13. This would have been between 2000 and 2001. The brother, A.J., is now in his 30s. Count III of the Second Superseding Indictment charges that Thompson used any facility of interstate and foreign commerce (a computer) to knowingly persuade, induce, entice and coerce, and attempt to persuade, induce, entice and coerce, A.J. to engage in any sexual activity for which any person could be charged with a criminal offense.

To prove the elements of these offenses, the prosecution presented ample evidence, including additional relevant conduct evidence, showing:

- Thompson abused and attempted to assault or molest his then-minor step-daughter, C.S., when she was approximately seven years of age and older;
- Thompson placed video cameras in his home and in a vacation rental and recorded his step-daughter, S.S., and his wife in various states of undress, including full nudity; and
- Thompson's personal computing device contained links to urls and websites named so as to entice viewing of child pornography and, in particular, incest.

## Argument

I. *Consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) support a sentence of life imprisonment.*

"A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* After determining the applicable advisory Guideline range, the district court must then consider the sentencing factors pursuant to 18 U.S.C. § 3553(a) to shape an appropriate sentence. *Id., cf. United States v. White*, 782 F.3d 1118, 1129 (10th Cir. 2015). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to serve purposes of the criminal laws;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established by the Guidelines;

(5) any pertinent policy statement issued by the Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and \

(7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a)(1)-(7).

Section 3553(a) mandates courts "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *Id.* A preponderance of the evidence standard governs this Court's factual determinations at sentencing. *See United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009). A district court's findings regarding offense enhancements are factual in nature and reviewed only for clear error. *United States v. Cruz Camacho*, 137 F.3d 1220, 1223-24 (10th Cir. 1998).

II.     *The nature and circumstances of the offense merit a life sentence.*

Consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) support a sentence of life imprisonment, given the circumstances of this case and defendant's history and characteristics. The PSR details the evidence presented at trial and other relevant conduct the Court may consider. The details appear to have been derived, in part, from the forensic interviews of the sisters who were targets of Thompson's sexual interest and activities. These interviews took place at a Child Advocacy Center shortly before Thompson's arrest. See PSR, ¶¶ 14-27. Information about the brother-in-law, who was just a pre-adolescent boy when Thompson took an illicit

4

interest in him, was derived, in part, from interviews with investigators as well as his testimony on the witness stand a trial. PSR, ¶ 28.

The PSR also describes materials found on one of the 21 electronic devices taken from Thompson's residence after this arrest. Some of these materials include photographs of headlines related to sexual crimes against children, child pornography, human trafficking, and other sex crimes. PSR, ¶ 29. They also include photographs depicting young children in swimsuits, and other photos of children that appeared to be zoom in on their torsos or private areas. *Id.* Although these materials were not offered or admitted into evidence at trial, they can still be considered for sentencing purposes. More significant, one of Thompson's desktop computers included reference to "Pornography URLS" – a list of vulgar, obscene names describing incestuous sexual activity between father and daughter, "young_stepdaughter," or "teen_daughter." PSR ¶ 31.

Defendant generally disputes many of the PSR findings, arguing a) that the law enforcement reports used to form the basis for the allegations were inaccurate or misleading, as shown by select portions of the trial testimony, and b) that the relevant conduct should be stricken because the defendant maintains his innocence. The Government objects to these general assertions. Whether trial testimony precisely matches interviews given months earlier by witnesses, especially child witnesses, is a matter for challenging or adjudging credibility at trial, and any imprecision is immaterial for sentencing purposes here as the sexual activity described was sufficient to meet the elements of each offense.

5

In particular, A.T.'s testimony in her interview that Thompson penetrated her, and her testimony at trial that it did not, makes no difference in the Guidelines calculation because the definitions of "sexual act" or "sexual contact," USSG 2G1.2(b)(4)(A)(1), comment. (n. 1), reference the statutory meanings in 18 U.S.C. §§ 2246(2) and (3), neither of which would have required Thompson's penetration of the victim. The jury instructions also defined sexual activity (Dkt. # 95, at 22) by reference to Oklahoma and Texas law, neither of which required penetration.

As to other relevant conduct set forth in the PSR, "In calculating loss under the Guidelines, the district court does not limit itself to conduct underlying the offense of conviction, but rather may consider all of the defendant's 'relevant conduct.'" *United States v. Alisuretove,* 788 F.3d 1247, 1254 (10th Cir. 2015) (quoting *United States v. Griffith,* 584 F.3d, 1004, 1011 (10th Cir. 2009) and U.S.S.G. § 1B1.3). Further, the Tenth Circuit has made it clear that "[r]elevant conduct under the Guidelines ... comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct." *Alisuretove,* 788 F.3d at 1254-55 (quoting *Griffith,* 584 F.3d at 1012 (internal quotation marks omitted)).

Such conduct may include references to Defendant coming into a bathroom while S.S. was in the shower (PSR, ¶ 26), and a reference to Defendant walking around the house naked (PSR, ¶ 27). Thompson objects to this inclusion in the PSR because the prosecution did not call S.S., the victim who made these statements in a forensic interview, to testify at trial. A prosecutor's decision to not call a witness does not

6

preclude the Court from considering the witness's out-of-court statements as relevant conduct for purposes of sentencing.

Defendant also objects to the inclusion in the PSR of references to certain images found on Thompson's electronic devices. These images included some 50 photographs of headlines related to sexual crimes against children, child pornography, human trafficking and other sex crimes. Defendant alleges these were related to an online community known as QAnon, which believes a network of people are involved in these activities. According to the Defendant, this is not of the kind or type of material advocating or endorsing child sexual abuse. If these materials had been introduced at trial, the jury would not be required to believe Defendant's explanation of why the materials were on found on his computer, and the Court is not required to accept his explanation for purposes of sentencing. Similarly, Defendant objects to ¶ 30 of the PSR which points to additional images of children, but these images were not presented at trial either.

Defendant also objects to ¶ 31 of the PSR, which contains the disturbing descriptions of incestuous child pornography videos contained in a list of "pornography URLs" found on Defendant's computer. This list was read to the jury by the case agent at trial, and the prosecution called the information technology specialist - senior digital forensic examiner who searched, extracted and analyzed the digital evidence in this case. Defendant's trial counsel questioned both of these witnesses at length as to the urls and videos. At the sentencing stage of proceedings,

7

to speculate as to the import of this material or to suggest that it was inadmissible at trial would appear to invite error.

### III.     *The remaining factors of 18 U.S.C. § 3553 warrant a life sentence.*

Thompson's history and characteristics warrant no sentence less than life in prison. Although he is the son of a broken marriage, and his first stepfather was an alcoholic, after his mother remarried again "he grew up in a home with all his needs met and free from abuse." PSR, ¶ 70. He was able to attend college, become a licensed minister and, ultimately, a "premier field engineer" for a software company. He earned a six-digit salary to provide a comfortable life for his first and second wives and their children. He has some health problems related to neck surgery and high blood pressure, but he has no history of mental or emotional problems or substance abuse (other than marijuana). He had the opportunities and resources to lead what many would consider a wonderful life, which he chose to risk losing every time he molested a child, including his own children, at tender and pivotal ages in their lives by doing abhorrent things to them that they can never forget.

A life sentence reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offenses. It also affords adequate deterrence to criminal conduct and protects the public from further crimes of the defendant. Certainly, there are lesser sentences available: the minimum statutory sentence for Count I and III is 10 years; for Count II, it is 30 years imprisonment. But a lesser sentence would not account for the specific offense characteristics included in the calculations.

Another key factor a sentencing court must consider includes the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. A court can be deemed to have appropriately considered sentencing disparities by properly calculating and considering the advisory sentencing guidelines range. *See Gall v. United States*, 552 U.S. 38, 54, 128 S.Ct. 586, 599, 169 L.Ed.2d 445 (2007) (explaining that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"). As many courts have explained, "A sentence within a Guidelines range 'necessarily' complies with Section 3553(a)(6)." *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) (quoting *United State v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009)). "The purpose of the guidelines is 'to eliminate disparities among sentences nationwide.'" *Id.* at 1372 (quoting *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008)).

A comparison of sentences may be misleading because of the ways in which cases, and defendants, are unique. For these reasons, this Court is not obligated to engage in a case-by-case comparison of sentences imposed in cases unconnected to Thompson's. But should this Court decide that such an assessment is necessary, it will find that the message in this District consistently conveyed to individuals like Thompson who find sexual gratification in abusing a child is this: crimes against children will be met with severe terms of incarceration.

Details as to several recent cases include:

*United States v. Andrew Lee Gibbs* (21-CR-144-GKF). Gibbs, 64, molested his two grandchildren, who immediately reported his single instance of abuse. Gibbs was convicted at trial of aggravated sexual abuse of a minor and abusive sexual contact of a minor. He was sentenced to 30 years in prison, consistent with the low end of the advisory guideline range.

*United States v. Jeffrey Arch Jones* (21-CR-23-GKF). Jones, 31, molested his two young stepdaughters for several years. He was found guilty at trial of two counts of aggravated sexual abuse of a child and one count of abusive sexual contact of a child. Jones was sentenced to three concurrent life terms in prison.

*United States v. Keith Duane Parnell* (21-CR-439-GWC). Parnell, 50, was found guilty at trial of multiple counts of aggravated sexual abuse of a minor. He was sentenced to 420 months in prison.

*United States v. Edward Joseph Parson* (21-CR-112-CVE). Parson, 31, sexually abused a six-year-old child for nearly two years through vaginal and oral sex. A federal jury convicted him of aggravated sexual abuse of a minor and he was sentenced to life in prison.

*United States v. Joshua David Slinkard* (21-CR-266-JFH). Slinkard, 41, sexually abused his eight-year-old stepdaughter for nearly two years. He also sexually abused the young girl's friend on one occasion. Slinkard pled guilty to two counts of aggravated sexual abuse of a minor and one count of possession of child pornography. He was sentenced to life in prison.

*United States v. David Anthony RomanNose* (21-CR-332-JFH). RomanNose, 40, sexually abused his 12-year-old niece and told her not to tell anyone. RomanNose was found guilty at trial of one count of aggravated sexual abuse of a minor by force and fear. He was sentenced to life in prison.

*United States v. Gary Dumont Riggs* (21-CR-176-GKF). Riggs, 78, sexually abused his grandchild for years. He was found guilty at trial for Aggravated Sexual Abuse of a Minor by Force and Threat in Indian Country and sentenced to life imprisonment.

*United States v. Raymond Dale Dudley* (22-CR-52-GKF). Dudley, 60, pled guilty to sexually abusing his adopted daughter. Another uncharged victim provided propensity evidence at trial. Just prior to trial, Dudley pled guilty. He was sentenced to 480 months for Aggravated Sexual Abuse of a Minor under 12 in

Indian Country and 180 months concurrent for Sexual Abuse of a Minor in Indian Country.

*United States v. Billy Scott McDonald* (22-CR-341-JFH). McDonald, 48, had oral sex with a 2-year-old foster child in his care. He entered a plea and was sentenced to 360 months in prison for Aggravated Sexual Abuse of a Minor Under 12 in Indian Country and to Production of Child Pornography, with both sentences to run concurrently.

*United States v. David Bert Paycer* (22-CR-215). Paycer, 52, repeatedly sexually molested his-year-old stepdaughter by touching and using a vibrator on her genitals. Three other uncharged, minor victims testified at trial. Paycer was found guilty a by jury of Aggravated Sexual Abuse of a Minor under 12 Years of Age in Indian Country and sentenced to life in prison.

These cases show that defendants in the Northern District of Oklahoma uniformly receive unforgiving sentences for crimes of a sexual nature against children.

### IV.   *The offense level calculation in the PSR is correct.*

The Offense Level Computation of the PSR correctly adds points for specific offense characteristics, including the defendant's role as a parent or relative of the victims; the commission of a sex act or sexual contact; the offense (in Count I) involving a minor who had not attained the age of 12 years; the victim (in Count II) being in the custody, care, or supervisory control of the defendant; and (in Count III) undue influence of a minor to engage in prohibited sexual conduct. As the PSR notes, Thompson exercised his right to a trial and was convicted of a jury; thus, he earns no reduction in offense level for acceptance of responsibility. He is not entitled to the benefit of an adjustment for under USSG 3E1.1, which has been deemed constitutional by federal courts. *See, e.g., United States v. Trujillo*, 906 F.2d 1456, 1461 (10th Cir. 1990).

11

The base offense level for Count I (Transportation of a Minor with Intent to Engage in Criminal Sexual Activity) is 28, which would mean a range of 78-97 months for a defendant, like Thompson, who has no criminal history. However, this range is not available as it is below the statutory minimum 120 months (10 years). The adjusted offense level of 40 for Count I would mean a range of 292-365 months if Thompson had not been convicted of Counts II and III as well.

The base offense level for Count II (Aggravated Sexual Abuse of a Minor Under 12 in Indian Country), the most serious of the offenses for which he was convicted, is 38. If no specific offense characteristic were applicable, application of the Guidelines would mean a range of 235 to 293 months for Thompson, which is below the 360 month (30 year) statutory minimum for that count. The adjusted offense level (if no multiple count adjustment were made) would be 40, which would mean a sentence of 292 – 365 months for Thompson on Count II alone.

Finally, Thompson would be facing a range of 78-97 months for Count III (Coercion and Enticement of a Minor) if the base offense level of 28 were considered without any specific offense characteristic points. His adjusted offense level would be 32 if he had been convicted of that charge alone, and the Guidelines range for Thompson, whose criminal history category is I, would be 121 to 151 months – just above the 10-year minimum for that charge.

With the multiple count adjustment, the combined adjusted offense level is 43, which would mean a Guideline sentence of life imprisonment without the Chapter Four Enhancement for repeat and dangerous sex offenders whose crimes were

committed against minors. As the PSR indicates, Thompson's offense level under the Guidelines is one of the rare instances where the total offense level (with the Chapter Four Enhancement) – 48 – is calculated in excess of the maximum allowable offense level. Accordingly, while his total offense level is reduced to 43, the Guideline range remains life imprisonment.

## Conclusion

Thompson is unrepentant. He engaged in a pattern of activity involving prohibited sexual conduct on numerous occasions and against numerous child victims. At trial, the prosecution argued that Thompson stole the innocence of these children. It is not known yet if any of the victims is requesting restitution for medical bills, mental health treatment or the like, but restitution of innocence is impossible. Thompson preyed upon the innocence of children for his own sexual gratification with no regard to the harm it would cause them. It is not yet known which, if any, of the victims will testify at the sentencing, but their testimony at trial indicates that, for the rest of their lives, they will remember their first sexual experiences happened when they were mere children who were unable to comprehend Thompson's perverse conduct. Their lives were changed unalterably by the abuse of a father or older brother who acted as a caregiver and exploited their trusting nature as children. His recurrent, abhorrent, criminal behavior merits the most severe penalty permitted by law in this case – life imprisonment.

Respectfully submitted,

CLINTON J. JOHNSON
UNITED STATES ATTORNEY

*/s/ Cheryl L. Baber*
Cheryl L. Baber, OBA No. 15745
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

## Certificate of Service

I hereby certify that on the 3rd day of January, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Clint James
*Attorney for Defendant*

*/s/ Cheryl L. Baber*
Cheryl L. Baber
Assistant United States Attorney